IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JORGE LUIS RIVERA-REYES,** | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 22-CV-02615 |
| | : | |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security,** | : | |
| *Defendant*. | : | |

MEMORANDUM

**KENNEY, J.**                                                                                         **July 31, 2023**

## I.   INTRODUCTION

Presently before the Court is Plaintiff's Motion for Attorney's Fees (ECF No. 23), objections by Defendant, the Commissioner of the Social Security Administration ("SSA") (ECF No. 26), Plaintiff's Reply (ECF No. 31), and SSA's supplemental authority (ECF No. 33). The Motion is fully briefed and was argued before the Court on July 25, 2023. For the reasons set forth below, the Motion will be granted in part and denied in part. The Court will award Plaintiff $14,950 in attorney's fees. An appropriate Order will follow.

## II.   BACKGROUND AND PROCEDURAL HISTORY

On January 26, 2023, Plaintiff filed a brief in this Court challenging the ALJ's determination that Plaintiff was not disabled due to a change in SSA rules. ECF No. 15. The narrow issue raised was whether SSA possessed the legal authority to apply the rule to Plaintiff, or whether such application of the rule was illegal retroactive rulemaking.[1] *Id.* at 2. In other words, Plaintiff

---

[1] The Social Security Act does not generally give SSA the power to promulgate retroactive regulations. 42 U.S.C. § 405(a); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1998).

1

did not challenge whether the ALJ properly adjudicated the case under SSA policy but, rather, whether SSA policy conforms with the law. *Id.* at 2–3.

The relevant change, effective April 27, 2020, provided that SSA "will no longer consider whether an individual is able to communicate in English" when determining disability claims under Titles II and XVI of the Social Security Act. 85 Fed. Reg. 10586. This change was made because English language skills are no longer a useful indicator of the vocational impact of an individual's changed ability due to developments in the national workforce. *Id.* In other words, SSA will "no longer consider whether an individual is able to communicate in English at the fifth and final step of the evaluation process" when determining whether an adult is disabled. *Id.* Though this rule became effective on April 27, 2020, it was applied to Plaintiff for his disability claims that originated in April 2016. This was done in conformance with agency policy to apply the rule to all claims pending at the time the rule became final. 85 Fed. Reg. 10586. Accordingly, Plaintiff was denied benefits as a result of this changed rule. ECF No. 10-8 at 33 n.3 (ALJ Gauffreau noting that "he would have qualified for disability as of the alleged onset date if the prior education categories were applied in this decision . . . [h]owever, the agency comments and footnotes in the Federal Register regarding the current education categories are clear that they apply to 'pending' claims[.]").

Subsequently, SSA determined that remand was warranted purportedly based on the facts of Plaintiff's claim rather than because of the legal question presented. The case was then voluntarily remanded on March 13, 2023 and Plaintiff was awarded full benefits. ECF Nos. 19, 20, 21.

On May 13, 2023, Plaintiff filed the instant Motion for Attorney's Fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(b) or, alternatively, 28 U.S.C. § 2412(d),

to which SSA Responded on June 26, 2023. ECF Nos. 23, 26. Plaintiff filed a Reply on July 18, 2023. ECF No. 31. The Court held Oral Argument on July 25, 2023 and the matter is now ripe for consideration.

### III. DISCUSSION

For the reasons set forth below, the Court will deny the award of bad faith fees but grant the award of standard EAJA fees without any reductions.

#### A. Bad Faith Fees

To award bad faith fees pursuant 28 U.S.C. § 2412(b), there must be clear evidence to support a finding that the government's position is both: (1) entirely without color; and (2) motivated by an "improper purpose," such as harassment or delay. *See, e.g.*, *Federal Trade Comm'n v. Freecom Commc'n, Inc.*, 401 F.3d 1192, 1197, 1201 (10th Cir. 2005); *Cliggett v. Barnhart*, No. 05-CV-583, 2006 WL 1648965, at *4 (E.D. Pa. June 9, 2006). A claim is entirely without color when, "viewed in light of the record evidence and underlying substantive law, the losing party's claims lacked *any* legal or factual basis." *Freecom Commc'n, Inc.*, 401 F.3d at 1201 (emphasis original). In other words, a claim is colorable "when it reasonably *might* be successful" and is not "utterly devoid of a legal or factual basis." *Id.* (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999)) (emphasis original). An improper purpose is found when the government's position is motivated solely by the desire to harass, delay, obstruct, or similar. *See Federal Trade Comm'n v. Kukendall*, 466 F.3d 1149, 1152 (10th Cir. 2006).

First, Plaintiff fails to set forth clear evidence that SSA's position regarding the application of the changed rule to Plaintiff's case was entirely without color. Plaintiff invites the Court to leap from the fact of SSA's voluntary remand to the conclusion that SSA has admitted that its policy was illegal, willfully contrary to law, and, thus, entirely without color. ECF No. 23-2 at 4. SSA

3

has made no such admission and, in fact, points to case law in which courts have agreed that the application of a revised regulation is not impermissibly retroactive.[2] ECF No. 33. Moreover, even

---

[2]   The Court does not rule on the merits of whether application of the rule to pending cases was illegal retroactive rulemaking. This issue is no longer squarely before the Court and the Court declines to take a back-door approach to decide it. Rather, "[t]he question is whether, viewed in light of the record evidence and underlying substantive law, the losing party's claims lacked *any* legal or factual basis." *Freecom Commc'n, Inc.*, 401 F.3d at 1201.

In *Combs v. Commissioner of Social Security*, the Sixth Circuit analyzed whether a changed rule which eliminated obesity as a separate impairment under step three, but allowed obese claimants to prevail if they showed that their obesity combined with other ailments otherwise qualified them for benefits, was impermissibly retroactive as applied to those who filed their claims before this change was enacted. 459 F.3d 640 (6th Cir. 2006) (en banc). The Sixth Circuit explained that "[t]he application of law existing at the time of decision does not violate the presumption against retroactivity unless the statute in question has a retroactive effect" which would "attach[] new legal consequences to events completed before its enactment." *See id.* at 646 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994)). In *Combs*, the court noted that "fair notice, reasonable reliance, and settled expectations [] weigh[ed] against finding a retroactive effect" because, for example, claimants did not become obese or otherwise impaired in reliance of the previous rule, nor did they file claims based on how agency decisions are made. *Id.*

Moreover, the Sixth Circuit noted that "changes to procedural rules generally do not have a retroactive effect because procedural rules regulate secondary as opposed to primary conduct." *Id.* at 647. Conversely, "rules that deprive persons of vested substantive rights may have retroactive effects if applied to conduct occurring prior to their enactment." *Id.* In *Combs*, "the change in step three [was] more procedural than substantive" because "[t]he ultimate criteria of disability eligibility [did] not change[]." *Id.* Finally, the Sixth Circuit provided that "[a] rule regulating the evaluation and presentation of proof does not normally operate retroactively if it is applied to pending cases." *Id.* at 649. Indeed, "[b]y reducing the number of erroneous benefits awards to non-disabled people, the SSA has restricted no actual substantive rights." *Id.* at 650 (noting that the change was made because some clearly non-disabled obese claimants were getting benefits to which they were not entitled). Other Circuits have favorably cited the analysis in *Combs*. *McCavitt v. Kijakai*, 6 F.4th 692 (7th Cir. 2021); *Gonzalez v. Cuccinelli*, 985 F.3d 357, 373–74 (4th Cir. 2021); *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

However, Plaintiff argues that these cases (*Combs*, *McCavvit*, *Gonzalez*, and *Poupore*) are not instructive because an unpublished, non-precedential, one-paragraph 2008 decision from the Third Circuit controls. That is not necessarily true. In *Christie v. Commissioner of Social Security*, Appellant argued that she should not have been denied benefits because the changed rule regarding obesity (discussed *supra*) took effect after her initial claim was denied (for unrelatedly erroneous reasons). *See* 267 Fed. App'x 146, 147 (3d Cir. 2008); *see also Christie v. Barnhart*, No. 03-CV-2265, 2006 WL 8445653 (E.D. Pa. Sept. 26, 2006). On appeal, the Third Circuit provided, in the most perfunctory manner, that "under the unusual circumstances of this case . . . the regulation in effect when the claim was first adjudicated should control the decision here." 267 Fed. App'x at 147. The Court cannot extrapolate from this brief and non-binding opinion (about a different rule change) to the conclusion that SSA's position in the instant case was entirely foreclosed, and therefore without color, as a matter of law. Indeed, as another court in this District noted, "the Third Circuit has not yet ruled on whether a new Social Security regulation is retroactive under *Bowen*" and, therefore, "it is not easy to predict how the [Third Circuit] would rule on this issue now." *Torres v. Kijakai*, No. 22-CV-2283, 2022 WL 17091877, at *4 (E.D. Pa. Nov. 21, 2022).

4

if SSA's legal theory failed as a matter of law, which has not been squarely decided, it does not follow that such a position would necessarily lack any basis at all. *Freecom Commc'n, Inc.*, 401 F.3d at 1201. As the briefs and oral arguments make clear, whether application of this specific rule to Plaintiff was impermissibly retroactive has not been definitively settled. Therefore, because the law is unsettled and SSA's position is at least somewhat supported by precedent, the Court cannot find that SSA's position was wholly untethered from any legal or factual support. Accordingly, Plaintiff fails to clearly show that SSA's claim was entirely without color.

Additionally, Plaintiff fails to *clearly* show that SSA has acted in bad faith in this case. Plaintiff's theory is as follows: bad faith is clear because SSA continues to engage in retroactive rulemaking, despite knowledge that Congress has not granted such authority, and because there was a three-year delay in awarding Plaintiff benefits to which he was ultimately entitled. ECF No. 31 at 5. First, as discussed above, whether the application of this specific rule change to cases pending at the time it was enacted is lawful or retroactive rulemaking has not been decided. Indeed, it is a difficult question to answer. Thus, the Court cannot credit Plaintiff's first theory as to improper purpose.

Second, though Plaintiff is justifiably aggrieved by the three-year delay, the record before the Court is silent as to: (1) SSA's motivation in applying the changed rule to Plaintiff; (2) SSA's motivation in denying Plaintiff's benefits several times over the course of several years; and (3) SSA's motivation in seeking a voluntary remand. The Court cannot find an improper purpose from

---

Of course, Plaintiff and SSA would argue that the change is substantive or procedural, respectively, and would analyze the factors of fair notice, reasonable reliance, and settled expectations differently. The fact that they could make such differing arguments that would be at least somewhat supported by the law, and the fact that the Third Circuit has not taken a position directly contrary to that of SSA, is enough to make SSA's position colorable.

5

the fact of the delay alone. Indeed, nothing in the record indicates that Plaintiff was denied benefits *because* SSA was motivated by a desire to delay or obstruct.

Notably, Plaintiff asserts that SSA sought a remand only to "duck the[] issue" of whether SSA improperly applied the changed rule to Plaintiff. July 25, 2023 Hr'g Tr. at 32:12. Conversely, SSA asserts that it sought remand for a "variety of factors." *Id.* at 19:17. However, SSA refuses to elaborate on the many reasons informing the voluntary remand due to attorney-client privilege concerns. *Id.* at 19:25. Accordingly, without any record evidence, the Court cannot pass judgment as to the propriety, or lack thereof, of the purposes motivating SSA throughout this litigation.[3] For all of the aforementioned reasons, the Court cannot find Plaintiff's burden met with respect to either of the bad faith prongs and will not award such fees.

### B. EAJA Fees

The Court will grant regular EAJA fees because SSA has not shown that its position was substantially justified. Additionally, the Court finds that all attorney's fees sought are reasonable and will not reduce the total award.

#### i. Substantial Justification

Plaintiff seeks regular EAJA fees pursuant to 28 U.S.C. § 2412(d). Under Section 2412(d), the prevailing plaintiff in a civil suit against a federal government agency is entitled to attorney's fees "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The burden of demonstrating such substantial justification rests with the government. *Scarborough v. Principi*, 541 U.S. 401, 414 (2004). The Supreme Court defines "substantially justified" as "justified in substance or in the main" which is "justified to a degree that could satisfy a reasonable person."

---

[3] Though the Court might speculate as to why the remand was sought, there is nothing in the record that allows the Court to go further.

*Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Accordingly, SSA must establish that the government's position at both the administrative level **and** during litigation was supported by: "(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounded; **and** (3) a reasonable connection between the facts alleged and the legal theory advanced." *Morgan v. Perry*, 142 F.3d 670, 684 (3d Cir. 1998) (emphasis added).

For the sake of completeness, the Court will briefly address whether SSA's position was substantially justified even though it is unclear whether SSA is arguing this issue. Notably, at Oral Argument, SSA seemed to concede this point. July 25, 2023 Hr'g Tr. at 33:9-10 ("[W]e agreed the plaintiff's entitled to EAJA fees"); *id.* at 34:4-5 ("Commissioner doesn't dispute that plaintiff is entitled to fees."). Additionally, though SSA's brief purports to address substantial justification and bad faith in a "merged" argument, the focus of SSA's fire is entirely aimed at the latter. Indeed, SSA does not set forth the elements of "substantial justification." Nor does SSA explain its reasoning for denying benefits for several years despite SSA's new position that Plaintiff was entitled to benefits all along. This change of course, which SSA assures the Court was for reasons *other than* the changed rule, begs the question: Was the denial of benefits substantially justified all along?

SSA does not disclose its reasoning for the voluntary remand due to privilege concerns. This is to their benefit as it prohibits the Court from finding any improper purpose related to the bad faith fees sought. However, failure to articulate the bases for SSA's voluntary remand prohibits the Court from finding that its position at the administrative level was substantially justified. This is so because "[t]he government's position under the EAJA includes 'not only the position taken in the litigation *but the agency position that made the litigation necessary in the first place.*'" *Morgan*, 142 F.3d at 684 (quoting *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 128 (3d

7

Cir. 1993)) (emphasis added). Even if the government's position in this litigation was substantially justified, if the failure to award benefits was not similarly justified then the Court must award Plaintiff's attorney's fees. *Taylor v. Heckler*, 835 F.2d 1037, 1040 (3d Cir. 1988) ("[T]he government is deemed to have two positions for EAJA purposes, both [of which] must be substantially justified. . . . [I]f either government position does not bear scrutiny, the prevailing party should be awarded attorneys' fees."). Had Plaintiff been awarded full benefits initially (to which SSA agrees he was always entitled), this litigation would not have been necessary.

To reiterate, even if SSA's position in this litigation was substantially justified, SSA's voluntary remand concedes that SSA initially, and repeatedly, overlooked *something* material (either legal theory or facts) at the administrative level. Accordingly, SSA cannot satisfy its burden of showing substantial justification when it leaves the Court entirely in the dark as to what law or facts informed SSA's initial (and losing) position, let alone how SSA's application of such laws and facts were substantially justified. Without full insight to SSA's reasoning, or targeted briefing on the substantial justification analysis, the Court cannot find the government's burden satisfied.

### ii. Reasonableness of the Fees

Plaintiff seeks attorney's fees for only 58.0 of the 62.1 hours expended by counsel on this case. SSA argues that the fees sought are unreasonable and contends that Plaintiff should not be awarded more than $6,256.00.

Though the "fee applicant bears the burden of establishing entitlement to a reasonable award and documenting the appropriate hours expended," and the Court may not *sua sponte* order a reduction in what it perceives to be an excessive fee; rather, the opposing party must provide a specific objection to the request. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *United States*

8

*v. Eleven Vehicles*, 200 F.3d 203, 212 (3d Cir. 2000). Accordingly, the Court takes each of SSA's objections in turn.

First, SSA relies upon the fact that Plaintiff's opening brief was only five pages to argue that this was not, in reality, a significantly challenging or unique case. ECF No. 26 at 10. Relatedly, SSA invites the Court to reduce the award for time spent exploring issues that, ultimately, did not form the basis of Plaintiff's appeal. *Id.* at 15. This reliance on counsel's final submission proves too much. The Court will not reduce the award based on counsel exercising professional judgment in narrowing the scope of Plaintiff's appeal rather than taking a "kitchen sink" approach. Nor will the Court reduce the award because counsel was able to refine his arguments in a concise brief. Indeed, the Court applauds counsel in both respects. *See Armstrong v. Saul*, 465 F. Supp. 3d 486, 490 (E.D. Pa. 2020) (deciding to reduce the number of claims raised on appeal "is time well-spent" because it streamlines the issues for the Commissioner and the Court).

Second, and relatedly, SSA asserts that because Plaintiff's appeal was purely legal, time spent reviewing the 1,731 page record (when counsel was not involved in the administrative proceedings) was excessive. *Id.* at 10. Yet, as Plaintiff points out, to ask that counsel submit an appeal without full review of the record would be to ask counsel to do the "bizarre," "irresponsible," and, possibly, "unprofessional." ECF No. 31 at 8. Regardless of the issues ultimately pursued on appeal, the Court is incredulous that counsel should not have reviewed the administrative record and should not be compensated for the same.

Third, SSA points out that the year-to-date average EAJA award was $6,556.08. ECF No. 26 at 10. However, an average has no bearing on that which is, by all accounts, not average. SSA cannot confirm that the legal issues were complex[4] to avoid bad faith fees and then, at the same

---

[4] July 25, 2023 Hr'g Tr. at 14:4-6 (The Court: "I do think it's complicated. Is it not complicated?" Counsel: "Certainly, Your Honor."); *id.* at 34:2-3 (The Court: "It is a complicated case though." Counsel: "It is.").

9

time, argue that counsel should be awarded only average compensation. This logic makes no sense, and, regardless, the Court will not be distracted by an average in lieu of conducting a case-specific inquiry.

Fourth, SSA takes issue with counsel's billing practices related to clerical tasks and block billing. ECF No. 26 at 11–14. Specifically, SSA asks the Court to eliminate 4.7 hours billed for the following time entries: (1) 2.6 hours on June 22, 2022 for reviewing the ALJ decision and related documents, conferring with the client, deciding on appeal viability, opening the FDC file, responding to additional client inquiry, preparing the complaint and related materials; (2) 0.4 hours on July 22, 2022 for reading all docket entries and orders, informing client of status and grant of IFP, answering questions, and checking file notes; (3) 0.5 hours on September 19, 2022 for conferring with SSA and client about SSA's need for an extension, checking the docket and file, explaining to the client that extensions are routine but, because client is apprehensive, assuring client that counsel will not agree to a second extension; and (4) 1.2 hours on October 17, 2022 for checking the transcript for completeness, preliminary review, informing the client of the status, and checking docket and file. ECF No. 26 at 12.

The Third Circuit disapproves of the "*wasteful* use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates." *Ursic. v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983) (emphasis added). The Court notes that Plaintiff's counsel, though highly skilled, is not highly priced because of the EAJA cap on hourly rates. This somewhat lessens the Court's concern with the performance of clerical tasks. *See id.* ("A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn."). Second, several of the tasks at issue are not clerical but the marks of counsel's good practice (*i.e.*, reviewing all docket entries and orders, checking file notes, monitoring the docket for updates). Additionally,

in this context, the Court declines to find that counsel's communication with his client was clerical or could have been performed by support staff. Finally, even if some tasks are arguably clerical, the Court does not find them to be wasteful. Counsel did not, for example, bill several hours for creating binders, calendaring deadlines, organizing files, or similar. Rather, counsel cumulatively billed less than five hours for a whole host of tasks, many of which were not clerical. Upon review of the time entries at issue, the Court is satisfied that counsel's clerical work (if any) was *de minimis*.

Moreover, the rule against block billing is to eliminate time entries that make it "difficult to understand what the billing attorney is doing" such as billing for "attention to papers," "attention to status," or "e-mails." *See Giedgowd v. Cafaro Group, LLC*, No. 20-CV-6184, 2021 WL 4963532, at *6 (E.D. Pa. Oct. 26, 2021) (citing *Tenafly Eruv Ass'n v. Borough of Tenafly*, 195 F. App'x 93, 100–01 (3d Cir. 2006)). However, the Court is "permitted to award time for block billing . . . so long as there is a reasonable correlation between the various activities listed in the block and the time spent completing those tasks." *Id.* (cleaned up). As noted above, SSA disputes less than five hours spent on these numerous tasks. The Court finds that 4.7 hours for the several tasks performed by counsel is not only reasonable, but impressive.

Fifth, SSA takes issue with counsel conferring with colleagues and describes such collaboration as "overkill." ECF No. 26 at 14–15. As discussed, *supra*, this was a difficult case and advanced an ambitious legal theory.[5] Upon review of the entries containing such tasks, the Court is satisfied that there is a reasonable correlation between the activities listed and the time spent on those tasks (including conferring with colleagues). *See id.*

---

[5] SSA does not, and cannot, dispute this fact because it informs the Court's bad faith analysis in SSA's favor.

Sixth, SSA seeks to reduce time spent "researching" because Plaintiff's brief cites only five cases. ECF No. 16. As already discussed at length, the legal arguments advanced were complex and unique. Simply because counsel's research did not yield more case law in support of his position does not mean that counsel should not be compensated for his thorough research in a matter this complex.

The Court also deems it reasonable to award fees related to the EAJA application and related litigation, including litigation related to bad faith fees (though ultimately unsuccessful). *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 162 (1990) (noting that time spent preparing EAJA fee applications is "necessary for the preparation of the party's case," and that there is "no textual or logical argument for treating . . . differently a party's preparation of a fee application and its ensuing efforts to support that same application."); *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) ("The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.").

To conclude, the Court enjoys substantial discretion in determining whether, and to what extent, an award of attorney's fees should be reduced. Given all of the facts and circumstances of this case, the associated record, the legal theories advanced, and each bill entry, the Court deems the award sought reasonable and declines to reduce the hours billed. Accordingly, the Court will award Plaintiff attorney's fees for 58.0 hours at a rate of $230 per hour (for work performed on the case in chief and the EAJA award application) and 7.0 hours at a rate of $230 per hour (for litigating the instant motion), for a sum of $14,950.

IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Attorney's Fees (ECF No. 23) will be granted in part and denied in part. The Court will award Plaintiff attorney's fees in the sum of $14,950 to be due as set forth in the accompanying Order.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**